Todd Blanche
Attorney General of the United States
Jeremy J. Kelley
Assistant United States Attorney
Eastern District of Washington
Post Office Box 1494
Spokane, WA 99210-1494
Telephone: (509) 353-2767

FILED IN THE U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON
OCT 07 2026
SEAN F. McAVOY, CLERK
SPOKANE, WASHINGTON

UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF WASHINGTON

UNITED STATES OF AMERICA,

Plaintiff,

v.

FRANCIER OBANDO PINILLO,
CHAD DEVIN NEUBURGER (a/k/a Douglas White), and
YEY BRANDON LLANOS MORENO (a/k/a Brandon Llanos, Eric De Silva),

Defendants.

No. 4:24-CR-6032-SAB

SUPERSEDING INDICTMENT

Vios: 18 U.S.C. § 371
Conspiracy to Commit an Offense Against the United States
(Count 1)

18 U.S.C. § 1349
Conspiracy to Commit Wire Fraud
(Count 2)

18 U.S.C. § 1343
Wire Fraud
(Counts 3–27)

18 U.S.C. § 1960
Unlicensed Money Transmitting Business
(Count 28)

18 U.S.C. § 981(a)(1)(C),
18 U.S.C. § 982, 28 U.S.C. § 2461(c)
Forfeiture Allegations

The Grand Jury Charges:

GENERAL ALLEGATIONS

At times relevant to this Superseding Indictment:

1. Defendant FRANCIER OBANDO PINILLO (PINILLO) is a citizen of Colombia and was a resident of Pasco, Washington in the Eastern District of Washington. During times relevant to this indictment, PINILLO owned, operated, and served as pastor of a church called *Ministerio Apostolico Profetico Tiempos De Poder* (*Tiempos De Poder*) in Pasco, Washington.

2. Defendant YEY BRANDON LLANOS MORENO (a/k/a Brandon Llanos, Eric De Silva) (LLANOS) was a citizen and resident of Colombia. In or about August 2021, LLANOS created a company in Colombia called Solano Fi.

3. Defendant CHAD DEVIN NEUBURGER (a/k/a Douglas White) (NEUBURGER) was a citizen of the United States who traveled to and resided for periods in Colombia.

4. During all times relevant to the Superseding Indictment, none of LLANOS, NEUBURGER, PINILLO, nor Solano Fi held a Money Transmitter License from the State of Washington, nor were LLANOS, NEUBURGER, PINILLO, or Solano Fi registered federally as a money transmitting business.

5. Under Washington law, "[a] person may not engage in the business of money transmission . . . unless the person is: (a) Licensed as a money transmitter under this chapter . . . ." WASH. REV. CODE § 19.230.030(1). A "money transmitter" is "a person that is engaged in money transmission." WASH. REV. CODE § 19.230.010(19). "Money transmission" means "receiving money or its equivalent value . . . to transmit, deliver, or instruct to be delivered to another location . . . by any means including but not limited to by wire, facsimile, or electronic transfer. . . ." WASH. REV. CODE § 19.230.010(18). Under Washington law, the unlicensed operation of a money transmission business is a gross misdemeanor if the unlicensed business operator received more than $500 within thirty days of operating the business. WASH. REV. CODE § 19.230.300(2).

6. When a user initiates a cryptocurrency transfer, the user creates an electronic transaction from the user's digital wallet, which includes information on the sender's address, the recipient's address, the amount of cryptocurrency to be transferred, and a transaction fee. The user initiates the transfer using the user's digital signature, which uses a private key and cryptographic process. Once digitally signed, the transaction is broadcast to the cryptocurrency network and, once confirmed, added to each network participant's and user's copy of the blockchain, which is a digital record or ledger of all transactions. Accordingly, all cryptocurrency transfers using decentralized cryptocurrency platforms use interstate wires.

The Conspiracy and Scheme and its Manner and Means

7. Paragraphs 1 through 6 of this Superseding Indictment are re-alleged and fully incorporated herein by reference.

8. Beginning on a date unknown to the Grand Jury, but no later than in or about August 2021, and continuing to at least in or about October 2023, in the Eastern District of Washington and elsewhere, Defendants YEY BRANDON LLANOS MORENO, CHAD DEVIN NEUBURGER, and FRANCIER OBANDO PINILLO devised, intended to devise, and participated in, a scheme, artifice, and conspiracy to defraud victims located in the Eastern District of Washington and elsewhere, including the specific victims discussed herein, and to obtain money and property from them by means of materially false and fraudulent pretenses, representations and promises.

9. The object of the conspiracy and scheme and artifice to defraud was for LLANOS, NEUBURGER, and PINILLO to personally enrich themselves by defrauding victims to provide funds for purported investment in a fraudulent investment business that LLANOS, NEUBURGER, and PINILLO represented and promised would provide investors significant and guaranteed monthly compounding returns. Specifically, LLANOS, NEUBURGER, and PINILLO fraudulently obtained victims' funds by falsely representing that the funds would

be invested for the victims' benefit into a cryptocurrency business managed by LLANOS, NEUBURGER, and PINILLO known as "Solano Fi". Contrary to their promises and representations, the victims' funds were not invested or maintained on their behalf, but rather converted to the use of LLANOS, NEUBURGER, and PINILLO and/or their co-conspirators and co-schemers.

10. During the relevant time period, LLANOS, NEUBURGER, and PINILLO devised and participated in the conspiracy and scheme to use Solano Fi to induce individuals to part with money and property. It was part of the conspiracy and scheme that:

a. In Colombia, in or about August 2021, LLANOS and NEUBURGER created a cryptocurrency investment scheme they called "Solano Fi." LLANOS and NEUBURGER used leads generated through social media to induce individuals in the United States to invest in the scheme.

b. In or about September 2021, PINILLO, then residing in the United States, became involved in the Solano Fi scheme. PINILLO initially invested in the scheme, but later transitioned to promoting and profiting from the scheme.

c. PINILLO told LLANOS and NEUBURGER that he had access to a big community that could be used for the scheme. PINILLO said he wanted to be named Chief Executive Officer for Solano Fi and to earn a commission on all funds deposited.

d. LLANOS, NEUBURGER, and PINILLO falsely and fraudulently represented that Solano Fi was a fund that would hold the funds of investors in trust for their benefit and use cryptocurrency "staking" to guarantee a compounding monthly return of 34.9%. LLANOS, NEUBURGER, and PINILLO falsely and fraudulently told prospective investors that Solano Fi was a legitimate investment company registered in the United Kingdom and the United States, and that by "staking" cryptocurrency investments, Solano Fi would return to investors large returns without risking their invested funds.

e. LLANOS, NEUBURGER, and PINILLO represented and promised that victims who invested in Solano Fi could access, view, and withdraw their money from Solano Fi through an online interface. LLANOS, NEUBURGER, and PINILLO said that after an initial period, investors could withdraw their initial investments, in addition to the accrued profits. The online application, however, was not functional, and in fact was designed to allow investors to see fraudulent purported balances and investment gains but not to withdraw funds.

f. In fact, as LLANOS, NEUBURGER, and PINILLO well knew, the cryptocurrency investment company Solano Fi did not actually exist. Rather, LLANOS, NEUBURGER, and PINILLO defrauded victims into making cryptocurrency transfers into accounts that they designated and then converted the victims' funds to themselves and their co-conspirators and co-schemers.

11. During the relevant time period, PINILLO's primary role in the conspiracy and scheme was to market and promote Solano Fi to individuals in the United States and elsewhere. In furtherance of the objectives of the conspiracy and scheme, PINILLO used his position of authority and trust as pastor of *Tiempos de Poder* as well as social media marketing to defraud numerous victims of millions of dollars, in the manner and means described below.

a. From no later than in or around November 15, 2021, to at least on or about October 29, 2023, PINILLO invited individuals living in and around Pasco, Washington and elsewhere to invest their personal money and cryptocurrency in what PINILLO represented was a cryptocurrency investment business known as "Solano Fi."

b. PINILLO made use of his position of trust and authority as a pastor to induce members of his congregation and others to invest their funds in Solano Fi, which PINILLO represented was not only a safe but guaranteed investment that came to him in a dream.

c. Further, as part of the conspiracy and scheme, PINILLO recruited other individuals, many of whom were investor victims themselves, to convince others to "invest" in Solano Fi, promising them even greater returns and benefits. PINILLO told prospective investors that if they referred other investors, the person who made the referral could earn 5% of the money initially invested and 5% of the investment's growth.

d. To further his fraudulent scheme and encourage victims to "invest" in Solano Fi, PINILLO showed and distributed false and fraudulent media and communications to his victims using interstate wires, including:

i. Creating and maintaining a Facebook page for Solano Fi, and posting false and fraudulent material to Solano Fi's Facebook page concerning Solano Fi;

ii. Giving talks, interviews, and seminars in person and remotely wherein he provided false and fraudulent statements, representations and promises to induce new investors to invest with Solano Fi;

iii. Maintaining a group on the application Telegram called "*Multimillionarios SolanoFi*" with more than 1500 members located in the Eastern District of Washington, the United States, and around the world, many of whom had invested with PINILLO, that he used to disseminate false and fraudulent information;

iv. Using his position as a pastor at *Tiempos de Poder* to induce new investors, including through live-streamed church services and social media accounts;

v. Maintaining a network of victims, recruiters, and "coaches" via social media and messaging apps, whom PINILLO used to recruit new investors in exchange for bonuses.

vi. As part of the conspiracy and scheme, PINILLO and his recruiters made a Microsoft Powerpoint presentation in person and virtually through interstate wires. The presentation contained numerous false and fraudulent

statements, representations, and promises. Specifically, the presentation:

1. welcomed investors to the world of cryptocurrency and stated that Solano Fi used decentralized finance (DeFi), the new wave in cryptography;
2. promised that it would take investors only a few minutes to invest in Solano Fi and reap the benefits of financial returns;
3. stated that there were two investment strategies potential Solano Fi investors could pursue: a "holder," in which funds are invested for a longer period, or a maximum gains strategy based using the volatility of the market to maximize gains;
4. provided an example of a $30,000 investment that would earn an additional $30,000 through Solano Fi, resulting in total payout of $60,000;
5. indicated that Solano Fi investments made use of "staking," in which cryptocurrency investments are pledged to a blockchain network in order to earn returns, and stating that investors had no reason or to sell or remove earnings from their initial investment;
6. listed some of the purported benefits of "staking", including the ability to generate passive income that could range in returns from "attractive" to "outrageous" depending on the investor's risk appetite;
7. promised prospective investors that enjoying the benefits of Solano Fi was easy, and was only a "few clicks away"; included a demonstrative graphic, in

Spanish[1], indicating the benefits of staking investments with Solano Fi:




12. Once funds were obtained from victims, LLANOS, NEUBURGER, and PINILLO did not invest the funds into any cryptocurrency fund, held or managed by Solano Fi or otherwise, nor did they use the funds to purchase or "stake" cryptocurrency assets, or place them into any sort of "staking vault" on behalf of victims. Instead, LLANOS, NEUBURGER, and PINILLO fraudulently converted the funds to their own personal use and benefit, and to the use and benefit of their co-conspirators and co-schemers.

13. After victims had been induced to invest, LLANOS, NEUBURGER, and PINILLO continued to falsely and fraudulently represent to victims that their assets had been invested in Solano Fi. When victims sought to remove their assets from Solano Fi, LLANOS, NEUBURGER, and PINILLO fraudulently represented

---

[1] The English translation of the graphic text appears in the graphic.

that they could not timely return victims' assets until the cryptocurrency markets improved, or because the website or application was down, due to ongoing legal issues involving FTX Trading Ltd., or that they would not return their investment unless the victims brought in a new investor to "buy out" their account. Further, LLANOS, NEUBURGER, and PINILLO told investors that they were required to send more funds to "repair" and upgrade the Solano Fi system so that investors could receive their funds back as well as these additional payments. While some victims refused to send additional money to do so, other victims sent additional money in an effort to recoup their investments and in reliance on the false and fraudulent representations, statements, and promises of LLANOS, NEUBURGER, and PINILLO.

14. Specifically, with respect to victim S.R.:

a. S.R., a resident of the Eastern District of Washington, first met PINILLO approximately ten years ago through a radio station, and also through sometimes attending PINILLO's church services at *Tiempos de Poder*.

b. In late 2021, PINILLO told S.R. about his new cryptocurrency investment fund Solano Fi. He falsely and fraudulently represented to S.R. that he could guarantee 34.9% monthly returns for S.R. and other investors, with no risk.

c. On January 11, 2022, relying on false and fraudulent misrepresentations made by PINILLO regarding Solano Fi, S.R. met with PINILLO and agreed to invest in Solano Fi. Acting on PINILLO's false and fraudulent statements, representations, and promises, S.R. made cryptocurrency transfers of four cryptocurrencies (Bitcoin, Solana, DogeCoin, and ShibaInu) totaling $10,762.46 to wallets designated by PINILLO.

d. In October of 2022, having not received any of the purported investment returns, S.R. contacted PINILLO and requested the initial investment and accrued profits be returned. PINILLO refused, but said that if S.R. found another person to "buy out" S.R.'s account, *i.e.*, another investor to send him money, he would provide S.R. her money.

e. In November of 2022, S.R. pursued a claim in small-claims court against PINILLO and obtained a judgment of $10,000, which remains unpaid.

15. Specifically, with respect to victim A.B.:

a. A.B., a resident of the Eastern District of Washington, met PINILLO in December 2021 after being introduced to him by an associate and recruiter of PINILLO. A.B. ultimately invested in Solano Fi and also, for a time, was in a romantic relationship with PINILLO.

b. PINILLO pitched A.B. on an investment opportunity with PINILLO's purported new company, Solano Fi. PINILLO falsely promised, represented, and stated that if A.B. invested with Solano Fi, PINILLO could guarantee a 40% monthly return on A.B.'s initial investment. PINILLO fraudulently represented that A.B. could draw from the investment gains at any time, while the initial investment would be "locked" for one year and could be withdrawn thereafter. To further the conspiracy, scheme, and artifice, PINILLO provided A.B. with access to the Solano Fi website and application that could be used to view A.B.'s account and to make transactions.

c. In reliance on PINILLO's fraudulent statements, representations, and promises, in two separate electronic transfers on or about December 29, 2021, A.B. transferred approximately $30,000 in cryptocurrency to cryptocurrency wallets designated by PINILLO.

d. A.B. not only invested with PINILLO, but assisted him with recruiting other investors. For example, after making her initial investment, A.B. allowed PINILLO to use her home to stage social media for Solano Fi which was used to portray an image of luxury and investment success. Additionally, when PINILLO hosted an event for potential investors at a hotel in Pasco, Washington, PINILLO requested that A.B. attend and invite other potential investors, promising her a commission for anyone she recruited who invested in Solano Fi. A.B. did invite friends and associates, including her brother, who also invested.

e. When A.B. requested withdrawals of her purported investment returns, but PINILLO did not provide her with any funds back, other than one instance in which PINILLO provided a payment to A.B. of approximately $18 so that he could film her making a withdrawal of her "account" for purposes of marketing Solano Fi on social media.

16. Specifically, with respect to victim R.C.:

a. R.C., a resident of the Eastern District of Washington, was introduced to Solano Fi and PINILLO by a coworker who was a PINILLO investor and recruiter.

b. R.C. interacted with PINILLO over the telephone. PINILLO offered an investment opportunity to R.C. through Solano Fi, promising R.C. a guaranteed 34.5% monthly return on his investment. PINILLO represented that investors could immediately withdraw the earned returns as they accrued, but could not withdraw their principal investment for six months, after which time the entire balance could be withdrawn at any time.

c. On or about April 5, 2022, R.C. sent $2,923.23 worth of Bitcoin to a wallet, beginning with bc1qtz, designated by PINILLO.

d. On or about April 21, 2022, R.C. sent $1,229.69 worth of Bitcoin to a wallet, beginning with 3FJ5Ga, designated by PINILLO.

e. R.C. eventually requested to withdraw his money, but PINILLO denied ownership of the wallets and stated he could not provide R.C. the funds due to technical issues. PINILLO instructed R.C. to call Solano Fi's customer service number—no one answered.

f. R.C. filed a claim against PINILLO in state court for the money he invested. R.C. prevailed, but has not been paid.

17. Specifically, with respect to victim P.J.V.:

a. P.J.V., a resident of the Eastern District of Washington, first met PINILLO in December of 2020 when attending service at PINILLO's church *Tiempos de Poder*. P.J.V. was a parishioner at *Tiempos de Poder* during the time

period that he invested with PINILLO, and trusted PINILLO because of his status as its pastor.

b. In November 2021, PINILLO pitched an additional investment opportunity with Solano Fi to P.J.V. PINILLO promised and represented to P.J.V. that P.J.V. would receive a guaranteed 1.5% daily return on investment. PINILLO further promised and represented that P.J.V.'s investment could be withdrawn at any time.

c. Between in or around November 2021, and February 2022, on or about the dates listed below, in reliance on PINILLO's false statements, representations, and promises, P.J.V. transferred more than $34,000 in cryptocurrency through wire transactions to cryptocurrency wallets designated by PINILLO as follows:

| Date | Approximate Amount | Detail |
|---|---|---|
| 11/16/2021 | $16,199.80 | Bitcoin transfer from Eastern District of Washington into wallet beginning with 3P7D5 designated by PINILLO |
| 11/16/2021 | $3,431.52 | Bitcoin transfer from Eastern District of Washington into wallet beginning with 3P7D5 designated by PINILLO |
| 11/17/2021 | $8,850.95 | Bitcoin transfer from Eastern District of Washington into wallet beginning with 3P7D5 designated by PINILLO |
| 12/3/2021 | $1,872.12 | Bitcoin transfer from Eastern District of Washington into wallet beginning with bc1qtz designated by PINILLO |
| 2/1/2022 | $3,918.34 | Bitcoin transfer from Eastern District of |

| | | |
|---|---|---|
| | | Washington into wallet beginning with bc1qtz designated by PINILLO |

d. In addition to his own investment, P.J.V. assisted PINILLO in recruiting additional victim investors. On three or four occasions, P.J.V. received cash from individuals which he deposited into his own bank account, used to purchase cryptocurrency, and sent to wallets designated by PINILLO on behalf of said individuals as investments in Solano Fi.

e. P.J.V. has never received his principal investment or any earnings from PINILLO. When P.J.V. requested funds back, PINILLO stated that he was unable to remit investors' funds because of ongoing legal issues with the cryptocurrency exchange FTX. When P.J.V. ultimately confronted PINILLO, PINILLO stated that that he would never be arrested because investors did not physically hand him money but instead transferred it to accounts he designated.

18. Specifically, as to victim S.R.O.:

a. In March 2022, S.R.O., a resident of the District of Colorado, was introduced to PINILLO at an in-person meeting in Colorado.

b. In March 2022, S.R.O. and S.R.O.'s former fiancée met with PINILLO. PINILLO attempted to convince S.R.O. and S.R.O.'s then-fiancée to invest in Solano Fi. PINILLO promised them a 34.9% guaranteed monthly return on any invested funds.

c. Relying on PINILLO's false and fraudulent statement, representations, and promises, S.R.O. invested approximately $36,000, and paid an additional $5,000 in fees. S.R.O. funded these investments using cryptocurrency that S.R.O. purchased and transferred to a wallet designated by PINILLO.

d. On or about February 27, 2022, relying on PINILLO's false and fraudulent statements, representations, and promises, S.R.O. purchased 0.134 BTC at crypto.com, for $5,113.32. On or about March 9, 2022, relying on PINILLO's

false and fraudulent statements, representations, and promises, S.R.O. transferred the 0.134 BTC, less a transaction fee of 0.0006 BTC, to wallet address beginning with bc1qtz designated by PINILLO. On or about April 5, 2022, S.R.O. transferred 0.605805 BTC, which was then worth $28,475.79, to wallet address beginning with bc1qtz designated by PINILLO. On or about April 7, 2022, S.R.O. transferred 10,434.44375 Dogecoin, which was then worth $1,528.64, to wallet address beginning with DU4dv designated by PINILLO.

e. PINILLO also offered to give S.R.O. 5% of the funds invested by people that S.R.O. recruited. PINILLO referred to this recruitment strategy as "coaching" and included giving the presentation identified at paragraph 12(g)(vi) to other prospective investors in Solano Fi. S.R.O. became a "coach" and recruited additional victims to invest with PINILLO.

f. PINILLO provided S.R.O. with the purported Solano Fi "app" which purported to show invested funds accruing in value. While S.R.O. and other victims could view their purported balances, S.R.O. was not able to withdraw any of the funds as PINILLO had promised.

g. The final time that S.R.O. could see the purported Solano Fi account balances was in July or August 2023. After that, PINILLO shut down the website, and promised investors they could "regain" access to their balances only if they invested an additional $1,500, which S.R.O. was not willing to do. S.R.O. continued to request S.R.O.'s money back, but was told by PINILLO that the money had been at FTX and that was why it could not be recovered.

19. Specifically, as to victim J.P.:

a. J.P., a resident of the Eastern District of Washington, met PINILLO through the *Tiempos de Poder* church.

b. In 2021, PINILLO discussed with J.P. investing in Solano Fi, promising a 30% return on investment, compounded monthly, and eligible to be withdrawn after between 3 and 6 months. PINILLO pitched this investment in

person, during Zoom meetings, and in Telegram chats. PINILLO also hosted an investment seminar at the Red Lion Hotel in Pasco, Washington, that J.P. attended.

c. J.P. ultimately made the following transfers from his own cryptocurrency accounts to wallets designated by PINILLO as purported investments in Solano Fi:

| **Date** | **Amount in USD** | **Cryptocurrency Type** | **Wallet ID designated by PINILLO** |
|---|---|---|---|
| 12/15/2021 | $448.35 | BTC (Bitcoin) | Wallet ID beginning with bc1qtz |
| 12/21/2021 | $645.04 | BTC | Wallet ID beginning with bc1qtz |
| 1/12/20222 | $373.48 | BTC | Wallet ID beginning with bc1qtz |
| 1/18/2022 | $342.67 | BTC | Wallet ID beginning with bc1qtz |
| 2/1/2022 | $438.05 | BTC | Wallet ID beginning with bc1qtz |

d. When J.P. attempted to withdraw the money that PINILLO had purportedly invested on his behalf, PINILLO claimed the funds were temporarily unavailable due to issues with FTX and technical issues with the Solano Fi server. PINILLO also requested that J.P. provide more money in order to "update the servers" and "fix technical issues" so that he could recover his investments, which J.P. did:

| **Date** | **Amount in USD** | **Cryptocurrency Type** | **Wallet ID designated by PINILLO** |
|---|---|---|---|

| | | | |
|---|---|---|---|
| 9/8/2023 | $226.62 | USDT (Tether) | Wallet ID beginning with 0xB3cA |
| 9/10/2023 | $167.40 | BTC | Wallet ID beginning with bc1qehz |
| 9/11/2023 | $1,048.49 | BTC | Wallet ID beginning with bc1qehz |
| 9/12/2023 | $112.91 | BTC | Wallet ID beginning with bc1qehz |
| 10/29/2023 | $1,013.99 | USDT | Wallet ID beginning with 0xB3cA |

20. Victims S.R., A.B., R.C., P.J.V., S.R.O., and J.P. are only a few of the many victims defrauded by LLANOS, NEUBURGER, and PINILLO, using substantially similar false and fraudulent representations and promises as part of the same conspiracy, scheme, and artifice. In total, the conspiracy, scheme, and artifice defrauded hundreds of individuals and obtained approximately $8,355,500 from victims based upon materially false and fraudulent pretenses, representations, and promises.

**COUNT 1**

(Conspiracy to Commit an Offense)

21. Paragraphs 1 through 20 of this Superseding Indictment are re-alleged and fully incorporated herein by reference. Furthermore, the allegations in each other Count of this Superseding Indictment are hereby incorporated in this Count.

22. Beginning no later than in or about August 2021, and continuing to at least October 2023, in the Eastern District of Washington and elsewhere, Defendants YEY BRANDON LLANOS MORENO, CHAD DEVIN NEUBURGER, and FRANCIER OBANDO PINILLO knowingly and willfully

conspired and agreed together and with each other, and with other persons both known and unknown to the grand jury, to commit at criminal acts against the United States, *to wit*, Wire Fraud in violation of 18 U.S.C. § 1343 and to Operate an Unlicensed Money Transmitting Business in violation of 18 U.S.C. § 1960, 31 U.S.C. § 5330, all in violation of 18 U.S.C. § 371.

**COUNT 2**

(Conspiracy to Commit Wire Fraud)

23. Paragraphs 1 through 22 of this Superseding Indictment are re-alleged and fully incorporated herein by reference. Furthermore, the allegations in each other Count of this Superseding Indictment are hereby incorporated in this Count.

24. Beginning no later than in or about August 2021, and continuing to at least October 2023, in the Eastern District of Washington and elsewhere, Defendants YEY BRANDON LLANOS MORENO, CHAD DEVIN NEUBURGER, and FRANCIER OBANDO PINILLO knowingly and willfully conspired and agreed together and with each other, and with other persons both known and unknown to the grand jury, to commit Wire Fraud in violation of 18 U.S.C. § 1343, all in violation of 18 U.S.C. § 1349.

**COUNTS 3 – 27**

(Wire Fraud)

25. Paragraphs 1 through 24 of this Superseding Indictment are re-alleged and fully incorporated herein by reference. Furthermore, the allegations in each other Count of this Superseding Indictment are hereby incorporated in these Counts.

26. On or about each of the dates set forth below, in the Eastern District of Washington and elsewhere, the Defendant, FRANCIER OBANDO PINILLO, for the purpose of executing the conspiracy and scheme described above, and attempting to do so, caused to be transmitted by means of wire communication in

interstate commerce the signals and sounds described below for each count, each transmission constituting a separate count:

| Count | Date | Description |
|---|---|---|
| 3 | 11/16/2021 | Electronic Bitcoin transfer with USD value of $16,199.80 from P.J.V. to Bitcoin wallet designated by PINILLO beginning with 3P7D5, resulting in an interstate wire communication sent from the Eastern District of Washington to a server located outside of Washington. |
| 4 | 11/16/2021 | Electronic Bitcoin transfer with USD value of $3,431.52 from P.J.V. to Bitcoin wallet designated by PINILLO beginning with 3P7D5, resulting in an interstate wire communication sent from the Eastern District of Washington to a server located outside of Washington. |
| 5 | 11/17/2021 | Electronic Bitcoin transfer with USD value of $8,850.95 from P.J.V. to Bitcoin wallet designated by PINILLO beginning with 3P7D5, resulting in an interstate wire communication sent from the Eastern District of Washington to a server located outside of Washington. |
| 6 | 12/3/2021 | Electronic Bitcoin transfer with USD value of $1,872.12 from P.J.V. to Bitcoin wallet designated by PINILLO beginning with bc1qtz, resulting in an interstate wire communication sent from the Eastern District of Washington to a server located outside of Washington. |
| 7 | 12/29/2021 | Electronic Ethereum transfer with USD value of $24,393.21 from A.B. to cryptocurrency wallet designated by PINILLO beginning with 0x6CA00, resulting in an interstate wire communication sent from the Eastern District of Washington to a server located outside of Washington. |
| 8 | 12/29/2021 | Electronic Bitcoin transfer with USD value of $5,854.51 from A.B. to cryptocurrency wallet designated by PINILLO beginning with bc1qtz, resulting in an interstate wire communication sent from the Eastern District of Washington to a server located outside of Washington. |
| 9 | 1/11/2022 | Electronic Solana transfer with USD value of $2,122.50 from S.R. to cryptocurrency wallet designated by PINILLO beginning with DTkQtJ, resulting in an interstate wire communication sent from the Eastern District of Washington to a server located outside of Washington. |

| | | |
|---|---|---|
| 10 | 1/11/2022 | Electronic Shiba Inu transfer with USD value of $2,926.24 from S.R. to cryptocurrency wallet designated by PINILLO beginning with 0x6CA00, resulting in an interstate wire communication sent from the Eastern District of Washington to a server located outside of Washington. |
| 11 | 1/11/2022 | Electronic Bitcoin transfer with USD value of $5,563.33 from S.R. to cryptocurrency wallet designated by PINILLO beginning with bc1qtz, resulting in an interstate wire communication sent from the Eastern District of Washington to a server located outside of Washington. |
| 12 | 1/11/2022 | Electronic Dogecoin transfer with USD value of $150.39 from S.R. to cryptocurrency wallet designated by PINILLO beginning with DU4dVd, resulting in an interstate wire communication sent from the Eastern District of Washington to a server located outside of Washington. |
| 13 | 4/5/2022 | Electronic Bitcoin transfer with USD value of $2,923.23 from R.C. to cryptocurrency wallet designated by PINILLO beginning with bc1qtz, resulting in an interstate wire communication sent from the Eastern District of Washington to a server located outside of Washington. |
| 14 | 4/21/2022 | Electronic Bitcoin transfer with USD value of $1,229.69 from R.C. to cryptocurrency wallet designated by PINILLO beginning with 3FJ5Ga, resulting in an interstate wire communication sent from the Eastern District of Washington to a server located outside of Washington. |
| 15 | 3/9/2022 | Electronic Bitcoin transfer with USD value of $5,650.64 from S.R.O. to cryptocurrency wallet designated by PINILLO beginning with bc1qtz, resulting in an interstate wire communication sent from outside the state of Washington to the Eastern District of Washington. |
| 16 | 4/5/2022 | Electronic Bitcoin transfer with USD value of $28,475.79 from S.R.O. to cryptocurrency wallet designated by PINILLO beginning with bc1qtz, resulting in an interstate wire communication sent from outside the State of Washington to the Eastern District of Washington. |
| 17 | 4/7/2022 | Electronic Dogecoin transfer with USD value of $1,528.64 from S.R.O. to cryptocurrency wallet designated by PINILLO beginning with Du4dVd, resulting in an interstate |

| | | |
|---|---|---|
| | | wire communication sent from outside the State of Washington to the Eastern District of Washington. |
| 18 | 12/15/2021 | Electronic Bitcoin transfer with USD value of $448.35 from J.P. to cryptocurrency wallet designated by PINILLO beginning with bc1qtz, resulting in an interstate wire communication sent from the Eastern District of Washington to a server located outside of Washington. |
| 19 | 12/21/2021 | Electronic Bitcoin transfer with USD value of $645.04 from J.P. to cryptocurrency wallet designated by PINILLO beginning with bc1qtz, resulting in an interstate wire communication sent from the Eastern District of Washington to a server located outside of Washington. |
| 20 | 1/12/2022 | Electronic Bitcoin transfer with USD value of $373.48 from J.P. to cryptocurrency wallet designated by PINILLO beginning with bc1qtz, resulting in an interstate wire communication sent from the Eastern District of Washington to a server located outside of Washington. |
| 21 | 1/18/2022 | Electronic Bitcoin transfer with USD value of $342.67 from J.P. to cryptocurrency wallet designated by PINILLO beginning with bc1qtz, resulting in an interstate wire communication sent from the Eastern District of Washington to a server located outside of Washington. |
| 22 | 2/1/2022 | Electronic Bitcoin transfer with USD value of $438.05 from J.P. to cryptocurrency wallet designated by PINILLO beginning with bc1qtz, resulting in an interstate wire communication sent from the Eastern District of Washington to a server located outside of Washington. |
| 23 | 9/8/2023 | Electronic Tether transfer with USD value of $226.62 from J.P. to cryptocurrency wallet designated by PINILLO beginning with 0xB3cA, resulting in an interstate wire communication sent from the Eastern District of Washington to a server located outside of Washington. |
| 24 | 9/10/2023 | Electronic Bitcoin transfer with USD value of $167.40 from J.P. to cryptocurrency wallet designated by PINILLO beginning with bc1qehz, resulting in an interstate wire communication sent from the Eastern District of Washington to a server located outside of Washington. |
| 25 | 9/11/2023 | Electronic Bitcoin transfer with USD value of $1,048.49 from J.P. to cryptocurrency wallet designated by PINILLO |

| | | |
|---|---|---|
| | | beginning with bc1qehz, resulting in an interstate wire communication sent from the Eastern District of Washington to a server located outside of Washington. |
| 26 | 9/12/2023 | Electronic Bitcoin transfer with USD value of $112.91 from J.P. to cryptocurrency wallet designated by PINILLO beginning with bc1qehz, resulting in an interstate wire communication sent from the Eastern District of Washington to a server located outside of Washington. |
| 27 | 10/29/2023 | Electronic Tether transfer with USD value of $1,013.99 from J.P. to cryptocurrency wallet designated by PINILLO beginning with 0xB3cA, resulting in an interstate wire communication sent from the Eastern District of Washington to a server located outside of Washington. |

All in violation of 18 U.S.C. § 1343.

## COUNT 28

(Unlicensed Money Transmitting Business)

27. Paragraphs 1 through 26 of this Superseding Indictment are re-alleged and fully incorporated herein by reference. Furthermore, the allegations in each other Count of this Superseding Indictment are hereby incorporated in these Counts.

28. From no later than on or about November 15, 2021, and continuing through at least on or about October 29, 2023, the Defendants YEY BRANDON LLANOS MORENO, CHAD DEVIN NEUBURGER, and FRANCIER OBANDO PINILLO, in the Eastern District of Washington and elsewhere, did knowingly conduct, control, manage, supervise, direct, and own all or part of an unlicensed money transmitting business, d/b/a "Solano Fi" and on their own behalf, which money transmitting business affected interstate or foreign commerce and was operated without an appropriate money transmitting license in Washington State, where such operation is punishable as a misdemeanor, and which money transmitting business failed to comply with the money transmitting business registration requirements under 31 U.S.C. § 5330 and regulations prescribed under such section, and which money transmitting business otherwise involved the

transportation and transmission of funds that were known by Defendants YEY BRANDON LLANOS MORENO, CHAD DEVIN NEUBURGER, and FRANCIER OBANDO PINILLO to have been derived from a criminal offense and were intended to be used to promote and support unlawful activity; all in violation of 18 U.S.C. § 1960, 31 U.S.C. § 5330.

NOTICE OF FORFEITURE ALLEGATIONS

The allegations set forth in this Superseding Indictment are hereby realleged and incorporated herein by this reference for the purpose of alleging forfeitures.

Wire Fraud

Pursuant to 18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461(c), upon conviction of an offense(s) in violation of 18 U.S.C. § 371, Conspiracy to Commit an Offense Against the United States, and/or in violation of 18 U.S.C. § 1343, Wire Fraud, and/or in violation of 18 U.S.C. § 1349, Conspiracy to Commit Wire Fraud, as set forth in this Superseding Indictment, the Defendants, FRANCIER OBANDO PINILLO, CHAD DEVIN NEUBURGER (a/k/a Douglas White), and YEY BRANDON LLANOS MORENO (a/k/a Brandon Llanos, Eric De Silva) shall forfeit to the United States any property, real or personal, which constitutes or is derived from proceeds traceable to the offense(s). The property to be forfeited includes, but is not limited to, the following:

MONEY JUDGMENT

A sum of money in United States currency, representing the amount of proceeds obtained by the Defendants, from the conspiracy and/or wire fraud violations.

Unlicensed Money Transmitting Business

Pursuant to 18 U.S.C. § 982(a)(1), upon conviction of an offense(s) in violation of 18 U.S.C. § 371, Conspiracy to Commit an Offense Against the United States, and/or in violation of 18 U.S.C. § 1960, Unlicensed Money Transmitting

Business, as set forth in this Superseding Indictment, the Defendants, FRANCIER OBANDO PINILLO, CHAD DEVIN NEUBURGER (a/k/a Douglas White), and YEY BRANDON LLANOS MORENO (a/k/a Brandon Llanos, Eric De Silva) shall forfeit to the United States of America, any property real or personal, involved in such offense(s) and any property traceable to such property. The property to be forfeited includes, but is not limited to:

<u>MONEY JUDGMENT</u>

A sum of money in United States currency representing the amount of proceeds obtained by the Defendants from the conspiracy and/or unlicensed money transmitting violations.

If any of the property described above, as the result of any act or omission of the Defendants:

a. cannot be located upon the exercise of due diligence;
b. has been transferred or sold to, or deposited with, a third party;
c. has been placed beyond the jurisdiction of the court;
d. has been substantially diminished in value; or
e. has been commingled with other property which cannot be divided without difficulty,

the United States shall be entitled to forfeiture of substitute property pursuant to

//

//

//

//

//

//

//

//

21 U.S.C. § 853(p), as incorporated by 18 U.S.C. § 981(a)(1)(C), 18 U.S.C. § 982(b)(1) and 28 U.S.C. § 2461(c).

DATED this 7 day of October 2026.

[redacted]

Todd Blanche
Attorney General

Alison L. Gregoire
Criminal Chief

Jeremy J. Kelley
Assistant United States Attorney